**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

CHRISTOPHER PAUL COURNOYER,    :
   Plaintiff,                      :
                               :
v.                             : Civil No. 3:18CV1473(AWT)
                               :
COMMISSIONER OF SOCIAL         :
SECURITY,                      :
   Defendant.                     :


## <u>ORDER AFFIRMING THE COMMISSIONER'S DECISION</u>

Plaintiff Christopher Paul Cournoyer appeals the

Commissioner's final decision denying the plaintiff's

application for disability insurance benefits pursuant to the

Social Security Act, 42 U.S.C. § 405(g).

The plaintiff filed a motion for reversal or remand,

contending that the Administrative Law Judge ("ALJ") failed to

provide good reason for assigning partial weight to the opinions

of Drs. John Haney and Paige Westerfield as to concentration,

persistence, pace and social functioning because both opinions

are "entirely consistent with the record".  Pl.'s Mem. to

Reverse ("ECF No. 19-1") at 3, 4, 6, 8 of 10.  The plaintiff

also argues that the ALJ erred (1) by finding that the plaintiff

had the ability to perform activities of daily living[1], (2) by

---

[1] This argument is unavailing.  Although, it "is well-settled that such activities do
not *by themselves* contradict allegations of disability" (ECF No. 19-1 at 4-5 of 10
(citing <u>Cowles v. Berryhill</u>, 3:17-cv-1229 (AWT), 2018 WL 4562346, at *4 (D. Conn.
Sept. 24, 2018) (internal quotations and citations omitted)) (emphasis added)), the
ALJ in this case also refers to medical reports, examinations, tests and the
plaintiff's self-reports to determine the weight to assign the allegations of

mischaracterizing the evidence as to hobbies[2], (3) by giving

partial weight to every psychiatric opinion[3], (4) by using the

same reasoning for different mental conditions to support the

weight given[4], and (5) by providing the vocational expert with an

incomplete hypothetical[5].  See ECF No. 19-1 at 4-9 of 10.

The defendant filed a motion for an order affirming the

ALJ's decision, maintaining (1) that the plaintiff failed to

demonstrate any significant error of fact or law, (2) that "the

ALJ was entitled to rely on the record as a whole", (3) that the

---

disability (see R. at 14-19).  The plaintiff also asserts that memory is not required
for the plaintiff to take care of himself and to color and write.  See ECF No. 19-1 at
5 of 10.  This argument is also unavailing.  To drive to a store, one must remember
how to drive and where the store is.  To color and to write, one must remember the
process of coloring and writing.

[2] The plaintiff supports this argument by noting that "when asked how well and how
often he does such things, he stated that he does not do them *as often as he would
like*" and that "[t]his does not indicate that Plaintiff is actually repairing engines,
only that he enjoys doing it."  ECF No. 19-1 at 5 of 10 (emphasis added).  This
argument is unavailing.  The use of the word "often" precludes the implication that
the plaintiff does not actually repair engines.  Not *doing* something as often as one
would like is not the same as only *enjoying* the activity.  Also, not doing something
as often as one would like is relative and includes the possibility that someone does
that thing for a prolonged period but due to their level of enjoyment characterizes it
as not as often as they would like.

[3] The plaintiff asserts that "[t]his is a clear violation of the regulations and case
law of this District".  ECF No. 19-1 at 7 of 10.  This argument is unavailing.  There
is no support for his assertion.  If all the opinions are inconsistent with other
substantial evidence, partial weight may be appropriate.

[4] This argument is unavailing.  The same reasoning may support two different opinions
about different conditions if the reasoning applies to both, as is demonstrated in
this case.

[5] The plaintiff argues that the RFC and therefore the ALJ's hypothetical question to
the vocational expert ("VE") did not contain all of plaintiff's limitations as to
social functioning and concentration, persistence, and pace.  See ECF No. 19-1 at 8-9
of 10, Pl.'s Reply ("ECF No. 22") at 3.  In support, the plaintiff cites Herren v.
Berryhill, 3:16-CV-1183(WIG), 2018 WL 921500, at *3 (D. Conn. Feb. 16, 2018), a
distinguishable case.  See ECF No. 19-1 at 9 of 10.  Unlike in Herren, in this case
substantial evidence supports a finding that the plaintiff can maintain concentration,
persistence, and pace in a job involving simple, routine, repetitious work.  In
support, the plaintiff also offers Dr. Haney's opinion that the plaintiff had a marked
limitation in social functioning.  However, "Marked" is defined in Dr. Haney's
assessment as "generally" unable to perform satisfactorily.  R. at 648.  "RFC does not
represent the *least* an individual can do despite his or her limitations or
restrictions, but the *most*."  See Social Security Ruling 96-8p (see also note 3).

ALJ "thoroughly explained his reasoning" for assigning partial

weight to the opinions of Drs. Haney and Westerfield, and (4)

that the ALJ's decision is supported by substantial evidence.

Def.'s Mot./Mem. to Affirm ("ECF No. 21") at 5, 6, 9-12 of 12.

For the reasons set forth below, the court concludes that

the ALJ applied the correct legal standard and his findings are

supported by substantial evidence.  Therefore, the

Commissioner's final decision is being affirmed.

## I.   <u>Legal Standard</u>

"A district court reviewing a final [] decision . . . [of

the Commissioner of Social Security] pursuant to . . . the

Social Security Act, 42 U.S.C § 405(g), is performing an

appellate function."  <u>Zambrana v. Califano</u>, 651 F.2d 842, 844

(2d Cir. 1981).  The court may not make a de novo determination

of whether a plaintiff is disabled in reviewing a denial of

disability benefits.  <u>See</u> <u>Wagner v. Sec'y of Health & Human</u>

<u>Servs.</u>, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the court's

function is to ascertain whether the Commissioner applied the

correct legal principles in reaching a conclusion and whether

the decision is supported by substantial evidence.  <u>See</u> <u>Johnson</u>

<u>v. Bowen</u>, 817 F.2d 983, 985 (2d Cir. 1987).  Substantial

evidence is "'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'"  <u>Williams v.</u>

<u>Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988) (quoting <u>Richardson v.</u>

<u>Perales</u>, 402 U.S. 389, 401 (1971)) (emphasis added).

Substantial evidence must be "more than a mere scintilla or

touch of proof here and there in the record." <u>Williams</u>, 859

F.2d at 258 (emphasis added). Absent legal error, this court

may not set aside the decision of the Commissioner if it is

supported by substantial evidence. <u>See</u> <u>Berry v. Schweiker</u>, 675

F.2d 464, 467 (2d Cir. 1982); 42 U.S.C. § 405(g)("The findings

of the Commissioner of Social Security as to any fact, if

supported by substantial evidence, shall be conclusive . . .

."). Thus, **if the Commissioner's decision is supported by**

**substantial evidence, that decision will be sustained, even**

**where there may also be substantial evidence to support the**

**plaintiff's contrary position**. <u>See</u> <u>Schauer v. Schweiker</u>, 675

F.2d 55, 57 (2d Cir. 1982) (emphasis added).

## II.  <u>Discussion</u>

Medical opinions from acceptable medical sources are

entitled to "controlling weight" if "well-supported by medically

acceptable clinical and laboratory diagnostic techniques" and

"not inconsistent with the other substantial evidence in [the]

case record". 20 C.F.R. § 404.1527(c)(2). When these opinions

are either not well-supported or are inconsistent with other

substantial evidence, the ALJ must, <u>inter</u> <u>alia</u>, give good

reasons for the weight given.  See 20 C.F.R. § 404.1527(c);

Social Security Ruling 96-2p (Rescinded by Federal Register

Notice Vol. 82, No. 57, page 15263 effective March 27, 2017,

after February 10, 2015, the filing date of the plaintiff's

application).  The ALJ's explanation should be supported by the

evidence and be specific enough to make clear to the claimant

and any subsequent reviewers the reasons and the weight given.[6]

See 20 C.F.R. § 404.1527(f)(2); Social Security Ruling 96-2p

(Rescinded by Federal Register Notice Vol. 82, No. 57, page

15263 effective March 27, 2017, after February 10, 2015, the

filing date of the plaintiff's application).

> The psychiatric review technique described in 20 CFR 404.1520a
> and 416.920a and summarized on the Psychiatric Review Technique
> Form (PRTF) requires adjudicators to assess an individual's
> limitations and restrictions from a mental impairment(s) in
> categories identified in the "paragraph B" and "paragraph C"
> criteria of the adult mental disorders listings. **The adjudicator
> must remember that the limitations identified in the "paragraph
> B" and "paragraph C" criteria are not an RFC assessment but are
> used to rate the severity of mental impairment(s) at steps 2
> and 3** of the sequential evaluation process. **The mental RFC
> assessment used at steps 4 and 5** of the sequential evaluation
> process **requires a more detailed assessment by itemizing various
> functions contained in the broad categories found in paragraphs
> B and C of the adult mental disorders listings**. . . .

Social Security Ruling 96-8p (emphasis added).

---

[6] The plaintiff contends that the ALJ's citation to whole exhibits makes it
"impossible" to determine if and what weight was given to evidence regarding memory
and concentration" (ECF No. 19-1 at 5-6 of 10) and to determine if he is relying "on
evidence prior to the onset of Plaintiff's memory complaints to reject the opined
limitations" (ECF No. 22 at 2, 3).  This argument is unavailing.  The court has been
able to determine what weight the ALJ gave to the issues of memory and concentration.
Also, as to evidence prior to the amended alleged onset date, the ALJ notes that "the
record did not show that the claimant's functioning significantly worsened following
his application".  R. at 15; 18, note 2.

An "**RFC does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*.**" Social Security Ruling 96-8p (emphasis added).

> RFC must not be expressed in terms of the lowest exertional level (e.g., "sedentary" or "light" when the individual can perform "medium" work) at which the medical vocational rules would still direct a finding of "not disabled." This would concede lesser functional abilities than the individual actually possesses and would not reflect the most he or she can do based on the evidence in the case record, as directed by the regulations.

Social Security Ruling 96-8p

The ALJ's Decision demonstrates his understanding of the paragraph B and C criteria:

> To satisfy the "**paragraph B**" criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. **A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.** An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis.
>
> **In understanding, remembering, or applying information**, the claimant had moderate limitation. The claimant reported experiencing memory problems during the relevant period (Exhibit 7F-9F). Additionally, cognitive testing revealed the claimant had variable working memory abilities with deficient mental processing in the impaired-to-borderline range (Exhibit 8F). However, **cognitive testing** also **showed the claimant had average language skills and that his memory performance was grossly intact (Exhibit 8F at 4).**

Further, the record showed that the claimant had several higher education degrees, which strongly suggests that he has retained some significant understanding abilities (Exhibit 5F at 2). Additionally, the claimant also reported that he could repair automobiles and small engines during the relevant period, which strongly suggests that he has retained significant understanding and concentration-related abilities despite his complaints (Exhibit 3E at 5). Overall, the record showed that the claimant had only a moderate limitation in his ability to understand, remember, and apply information.

In interacting with others, the claimant had moderate limitation. The claimant told providers that he often felt angry and reported that he had been fired from past jobs due to difficulty getting along with others, including his supervisors (Exhibit 6F at 7; 8F; 11F; 13F; 15F). Mental status examinations from the relevant period showed the claimant appeared anxious, sad, and talkative with a blunted affect, intermittent paraphasic errors when speaking (Exhibit 8F; 11F). However, a neuropsychological consultative examination revealed the claimant appeared engaged and cooperative during that visit (Exhibit 8F). Additionally, treatment records showed that the claimant appeared cooperative during meetings with providers (Exhibit 7F). Treatment records also showed he often appeared pleasant (Exhibit 9F; 18F at 2). Moreover, the claimant maintained a relationship with his wife during the relevant period, which also suggests that he has retained a significant ability to get along with others (Exhibit 13F; 14F). Moreover, the claimant self-reported that he goes shopping and attends a sporting event with a family member every year, which strongly suggests that he has retained some significant ability to tolerate crowds and strangers (Exhibit 3E). Overall, the record showed that the claimant had only a moderate limitation in his ability to interact with others.

With regard to concentrating, persisting, or maintaining pace, the claimant had moderate limitation. The claimant complained of experiencing some attention problems during the relevant period (Exhibit 7F-9F). Cognitive testing revealed the claimant had variable

attention abilities with deficient mental processing in the impaired-to-borderline range (Exhibit 8F). However, **mental status examinations from the relevant period** also **showed the claimant displayed an intact ability to calculate and intact concentration during visits with providers (Exhibit 11F). Examinations performed by his providers also showed normal concentration and attention as well (Exhibit 7F; 14F). Moreover, the claimant self-reported that he can repair small engines and follow written instructions (Exhibit 3E). Further, the claimant admitted to providers that he wrote for enjoyment and that he completed adult coloring books, which suggests that he has retained significant concentration abilities (Exhibit 14F at 10). Similarly, the claimant also noted at the time of his application that he could search for jobs, check the newspaper for employment ads, run errands, and complete some chores (Exhibit 3E).** Overall, the record showed that the claimant had only a moderate limitation in his ability to concentrate, persist, and maintain pace.

**As for adapting or managing oneself**, the claimant had moderate limitation. The claimant complained of some suicidal ideation during the relevant period, and he reported that he had trouble handling stress and changes in routine (Exhibit 3E; 11F; 13F). Additionally, the claimant reported that he had difficulty performing activities of daily living due to poor motivation at times (Exhibit 3E). However, **a neuropsychological evaluation reported that the claimant could maintain independence in all activities of daily living (Exhibit 8F at 4). Additionally, treatment records showed that the claimant appeared well-groomed during meetings with providers and he told providers that he could independently complete his activities of daily living (Exhibit 7F; 11F at 18). The claimant also self-reported that he could complete household chores and yard work, and that he could prepare his own meals (Exhibit 3E).** Overall, the record showed that the claimant had only a moderate limitation in his ability to adapt or manage himself

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme"

limitation, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "**paragraph C**" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life. An **neuropsychological examination reported the claimant maintained independence in all activities of daily living during the relevant period, and treatment records did not document any significant decline in functioning following his loss of work (**_See_** Exhibit 1F- 7F; 8F at 4; 9F-18F).** Similarly, **after he lost his prior employment, the claimant noted that he could search for jobs, check the newspaper for employment ads, run errands, and complete some chores, which suggests that he retained significant adaptive functioning during periods of change (Exhibit 3E).** This evidence suggests that the severity of the claimant's mental impairments does not satisfy the "paragraph C" criteria. Further, the record does not support a finding that the "paragraph C" criteria have been met.

. . . .

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. **The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental functional analysis**.

R. at 14-15 (emphasis added).

The ALJ's Decision also demonstrates his understanding that

**RFC** represents the *most*, not the *least* that the claimant can do

despite his limitations:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform a full range of work at all
> exertional levels but with the following non-exertional
> limitations: **The claimant is able to understand, remember,
> and carry out simple tasks in a setting with few workplace
> changes. The claimant is limited to occasional interaction
> with co-workers and supervisors** in a setting that **does not
> require collaboration or teamwork.** The claimant should
> have **no interaction with the public.**

R. at 16 (emphasis added).

> The **rationale** for the RFC is clearly articulated:

> During the hearing, **the claimant testified** that he
> was fired from his previous places of employment due
> to difficulties getting along with others and for
> performance-related issues. Specifically, the
> claimant testified that he has experienced
> progressively worsening symptoms of difficulty
> getting along with others, anxiety, and difficulty
> completing tasks. The claimant testified that he has
> difficulty dealing with other people and reported
> that [he] often explodes. The claimant also testified
> that he no longer speaks with certain family members
> due to his problems getting along with others. Also,
> the claimant testified that he has frequent symptoms
> of anxiety that makes it difficult for him to
> complete tasks. The claimant further testified that
> he has mood problems as well. In addition to these
> symptoms, the claimant testified that he has
> experienced cognitive issues as well and testified
> that he could not put together a five-piece puzzle
> during a cognitive test. In terms of daily
> activities, the claimant testified that he can
> occasionally complete some activities but, depending
> on his mood, sometimes he will be unable to complete

tasks. In addition to his hearing testimony, the claimant self-reported that he has trouble finding words, that he does not get along with others, and that his memory and task completion skills are poor (Exhibit 3E). Additionally, the claimant reported that he has trouble with talking, hearing, seeing, remembering, completing tasks, getting along with others, understanding, following instructions, and concentrating (Exhibit 3E).

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the above alleged symptoms; however, the **claimant's statements concerning the intensity, persistence and limiting effects** of these symptoms **are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision**. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence.

**Regarding the claimant's mental impairments**, the record showed that the claimant had a history of complaining of mood swings, grandiosity, a depressed mood, anger, and irritability (Exhibit lF; 4F; 5F). Notably, though, **prior to the amended alleged onset date, the record showed that the claimant's condition had significantly improved with medication despite his occasional medication non-compliance** (Exhibit lF at 7, 59, 152, 158; 5F at 2; 6F at 1). The claimant also **worked several jobs prior to the amended alleged onset date** as well, **which suggests that he retained a significant ability to work at that time** (Exhibit 8D; 10D; 4E; 1F at 51; 5F at 2). Even so, the record also showed that the claimant lost several jobs in a short period of time due to trouble getting along with authority figures and behavior problems at that time (Exhibit 6F at 7).

**As of the amended alleged onset date**, the record

showed that the claimant continued to complain of experiencing symptoms of apathy, depression anxiety, mood liability, and anger (Exhibit 8F; 11F; 13F; 15F). The claimant also complained of some suicidal ideation (Exhibit 11F; 13F). Additionally, the claimant complained of experiencing significant memory, word-finding issues, and attention problems as well (Exhibit 7F-9F). Mental status examinations from the relevant period showed the claimant occasionally appeared anxious, sad, and talkative with a blunted affect at times and some intermittent paraphasic errors when speaking (Exhibit 8F; 11F). Cognitive testing revealed the claimant had variable attention and working memory abilities with deficient mental processing in the impaired-to-borderline range (Exhibit 8F). However, cognitive **testing** also **showed** the claimant reportedly maintained **independence in all activities of daily living**, that he had **average language skills**, and that his **memory performance was grossly intact** (Exhibit 8F at 4). Further, mental status **examinations** from the relevant period also **showed** the claimant **frequently displayed an intact memory, an intact fund of knowledge, an intact ability to calculate, intact concentration, and an average intelligence** (Exhibit 11F). Similarly, the aforementioned neuropsychological consultative examination revealed the **claimant appeared engaged, alert, oriented, and cooperative with an organized thought process** (Exhibit 8F). Other examinations performed by his regular care providers also showed an **appropriate fund of knowledge, normal concentration and attention, and normal language fluency** as well (Exhibit 7F; 14F). Additionally, treatment **records showed** that **the claimant appeared alert, cooperative, and well-groomed** during meetings with providers (Exhibit 7F). Treatment records also showed **he often appeared pleasant** (Exhibit 9F; 18F at 2). To treat his symptoms during the relevant period, the **claimant took prescription medications**, which **he continued to report had partially improved his symptoms** (Exhibit 14F at 16). Notably, at one time, the **claimant reported that he had generally been doing very well on medications** (Exhibit 14F at

16). Additionally, the claimant attended some counseling and sought emergency care on one occasion for suicidal ideation (Exhibit 11F; 13F; 15F; 16F).

In addition to this evidence, the **claimant admitted** to providers that **he wrote for enjoyment and that he completed adult coloring books, which suggests that he has retained significant concentration abilities** (Exhibit 14F at 10). The claimant also noted at the time of his application that **he could search for jobs, check the paper for employment ads, run errands, and complete some chores, which strongly suggests that he retained significant concentration and adaptive abilities** despite his complaints (Exhibit 3E).[2][7] Additionally, the claimant also reported that **he could repair automobiles and small engines, which strongly suggests that he has retained significant understanding and concentration-related abilities** despite his complaints (Exhibit 3E at 5). Similarly, the claimant admitted to providers at one time that **he helped a family member at his shop** (Exhibit 14F at 10). Further, the record also showed the claimant **interviewed for jobs and worked during part of the relevant period as well, which strongly suggests that he has retained some significant ability to get along with others** (Exhibit 10D; 12F at 5; 14F at 10).

**Overall, the record showed that the claimant experienced some variable memory and attention abilities, some reduced mental processing, and some anger, anxiety, mood lability, and depression during the relevant period but also showed that he could independently complete his activities of daily living, that he wrote, colored, and repaired engines, that he generally displayed an intact memory and ability to concentrate, and showed that his conditions partially**

---

[7] Footnote 2 states:

Although this evidence was submitted just prior to the amended alleged onset date, **the record did not show that the claimant's functioning significantly worsened following his application (*See* Exhibit IF-18F).**

R. at 19.

**improved with medication and treatment** (Exhibit 10D; 3E; 1F; 4F-9F; 11F-16F; 18F).

In addition to the medical evidence of record, the undersigned has carefully considered each opinion from acceptable medical sources contained in the record. The undersigned has also considered the other opinions from other sources contained within the record, even though these sources may not qualify as acceptable medical sources under the regulations.

**Partial weight is given to the February 2015, March 2015, and April 2017 opinions of John Haney, M.D., as contained in Exhibits 2F, 4F, and 17F.** In his **February 2015** opinion, **Dr. Haney opined that the claimant had generally no limitations in the domains of understanding and memory, sustained concentration and persistence, and in social interaction except for a slight limitation in his ability to accept instructions and criticism (Exhibit 2F at 1-3).** In his **March 2015** opinion[], Dr. Haney opined that the claimant could not handle his own funds, that he had a reduced ability to use appropriate coping skills, and that he had a limited ability to handle frustration appropriately. Additionally, Dr. Haney noted **no problems with social interactions or task performance.** In his **April 2017** opinion, Dr. Haney opined that the claimant had slight-to-marked limitations in understanding and memory, slight-to-marked limitation in sustaining concentration and persistence, slight-to-marked limitation in social interactions, and none or slight limitation in his adaptation abilities (Exhibit 17F). **Notably,** in his April 2017 opinions, **Dr. Haney** also **opined that the claimant could complete a workweek without impact from psychological symptoms, that he could respond in a socially appropriate way in the work setting, that he was alert to hazards, and that he could independently make his own plans** (Exhibit 17F).[8]

---

[8] In his reply, the plaintiff argues that Dr. Haney's "narrative clearly applies only to the slight limitations", that "the highest degree of limitation . . . controls the rating for the entire area" and that Dr. Haney's opinion that the plaintiff "has a marked limitation in maintaining attention and concentration means Plaintiff has

**Overall, Dr. Haney's opinions are only partially consistent with the medical evidence of record as a whole, which** showed that the claimant experienced some variable memory and attention abilities, some reduced mental processing, and some anger, anxiety, mood lability, and depression during the relevant period but also **showed that he could independently complete his activities of daily living, that he wrote, colored, and repaired engines, that he generally displayed an intact memory and ability to concentrate, and showed that his conditions partially improved with medication and treatment (Exhibit 10D; 3E; 1F; 4F-9F; 11F-16F; 18F).** While this evidence supports some level of limitation in these domains of functioning, it does not support more than moderate limitations in any domain of functioning as opined here and does not support Dr. Haney's opinions that the claimant could not handle funds or that he had a limited ability to handle frustration. **Moreover, Dr. Haney did not offer any medical evidence to support his February 2015 and April 2017 opinions, and the findings offered in his March 2015 opinions did not support the restrictive limitations opined.** Instead, there he simply noted some irritability that was moderated somewhat by medication. Further, **two of these opinion are from outside of the relevant period**. Even so, as Dr. Haney is a treating source, as his opinions are somewhat consistent with each other, and as one of his opinions is from the relevant period, his opinions are afforded some weight. For all of these reasons, Dr. Haney's opinions are given only partial weight [].

**Partial weight is given to the March 2017 opinion of Paige Westerfield, Psy.D., as contained in Exhibit 15F.** In that opinion, Dr. Westerfield opined that the claimant had a personality disorder, that he was

marked limitation in concentration, persistence, and pace." ECF No. 22 at 1-2. The evidence and the regulations yield a different conclusion. The plaintiff cites standards related to the listing analysis; however, both the regulations and the ALJ make clear that there are distinct legal standards for the listing analysis and the RFC determination. Also RFC, as stated before, "does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*." Social Security Ruling 96-8p (see also note 3).

chronically and mildly depressed, and that his anger
and interpersonal conflicts with former superiors and
co-workers made it difficult[] for him to keep a job
for any significant length of time (Exhibit 15F).
Overall, Dr. Westerfield's opinions are partially
consistent with the medical evidence of record as a
whole, which showed that the claimant experienced
some variable memory and attention abilities, some
reduced mental processing, and some anger, anxiety,
mood lability, and depression during the relevant
period but also **showed that he could independently
complete his activities of daily living, that he
wrote, colored, and repaired engines, that he
generally displayed an intact memory and ability to
concentrate, and showed that his conditions partially
improved with medication and treatment (Exhibit 10D;
3E; IF; 4F-9F; 11F-16F; 18F).** While this supports some
level of limitation in his ability to work with others,
it does not fully support the level of functioning
here. **Moreover, Dr. Westerfield noted that malingering
by the clamant could not be ruled out in assessing
his functioning, which significantly undermines her
findings.** Further, **she had only treated the claimant
prior to the amended alleged onset date, in 2015, which
is well before the date of her opinion from 2017.** Even
so, as a treating source and a mental health
specialist, her opinions are afforded some weight. For
all of these reasons, Dr. Westerfield's opinions are
given partial weight.

R. at 16-19 (emphasis added).

To support his assertion that Dr. Haney's three opinions
were "entirely consistent" (ECF No. 19-1 at 3 of 10) rather than
partially consistent with the record, the plaintiff offers the
following:

Regarding memory and concentration concerns, the best
evidence is found in the report of neuropsychological
testing. Dr. Masse noted that Plaintiff's attention and
concentration skills, mental processing, and episodic memory
were variable. T 471. Dr. Haney's notes report Plaintiff's

memory concerns. T 547-50, 646. Plaintiff first complained of memory difficulties in October of 2016, and was immediately referred for neurological testing. T 477. The fact that Plaintiff's memory was normal in some of the treatment notes prior to his complaints of a memory problem is irrelevant. . . . . ALJ's RFC, and the opinion completed by Dr. Haney, must be based on Plaintiff's ability to sustain basic work activities for eight hours a day, five days a week. SSR 96-8p. If Plaintiff's abilities in attention and concentration, mental processing, and memory are variable, then he would not be able to sustain those functions for the required amount of time, which fully supports Dr. Haney's opinion. He opined that Plaintiff had moderate limitation in the ability to understand, remember, and carry out simple instructions and marked limitation in the ability to maintain attention and concentration (T 468), which is entirely supported by the results of neuropsychological testing.

ECF No. 19-1 at 5-6 of 10. These arguments are unavailing. As noted elsewhere, an "RFC does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*." Social Security Ruling 96-8p (see also note 3). Absent legal error, a decision supported by substantial must be sustained even where there may also be substantial evidence to support the plaintiff's contrary position. <u>See</u> <u>Berry</u>, 675 F.2d at 467; <u>Schauer v. Schweiker</u>, 675 F.2d at 57.

To support his assertion that "Dr. Haney and Dr. Westerfield both opined significant limitations in social functioning that would likely be disabling" (ECF No. 19-1 at 6 of 10), the plaintiff offers the following:

Dr. Haney opined Plaintiff had a moderate limitation in the ability to respond to coworkers and marked limitation in the ability to respond to supervision. T 649. Dr. Westerfield stated that Plaintiff has difficulty maintaining jobs due to anger and interpersonal conflicts with coworkers and supervisors. T 644. The record supports these statements. In February 2015, Plaintiff reported that he had been fired from five jobs in the past nine months due to trouble with authority. T 441. A year later, when hospitalized for suicidal thoughts, he again reported the same thing, and his wife confirmed his reports. T 532. Dr. Haney noted in his treatment notes that Plaintiff struggled to maintain a job. T 547-50, 646. He confirmed that Plaintiff's social functioning limitations were a significant problem in Plaintiff's ability to maintain employment in his March 2015 letter. T 426. Plaintiff confirmed at the hearing that he has lost several jobs due to his inability to get along with people. T 844, 849. The record makes clear that Plaintiff had attempted to work, but has ultimately been unable to maintain a job due to his inability to get along with others in the workplace. The ALJ's RFC limiting Plaintiff to occasional contact with coworkers and supervisors is simply insufficient to account for all of Plaintiff's social functioning limitations. . . . .

The ALJ's errors are harmful. First, when asked what would happen if Plaintiff was explosive at work one time, and the VE stated he would be terminated. T 856. Considering that Plaintiff has already had explosive conflicts in several jobs, it is likely that it would happen again, and Plaintiff would be unable to maintain employment.

ECF No. 19-1 at 6-8 of 10. These arguments also are unavailing.

The court finds the defendant's responses persuasive. They demonstrate that the ALJ's rationale for assigning partial weight to the opinions of Dr. Haney and Dr. Westerfield is reviewable:

[T]he ALJ explained that, overall, Dr. Haney's opinions were only partially consistent with the medical evidence as a whole, discussed earlier in his decision (Tr. 14-17), which showed that Plaintiff experienced some variable memory and concentration abilities, reduced mental processing, and some anger, anxiety, mood lability and depression, but generally displayed an intact memory. Tr. 19; *see* Tr. 411, 426, 433, 451, 460, 602, 644. . . . .

The ALJ additionally observed that Dr. Haney's opinions, only one of which was from the relevant period and indicated that Plaintiff had a marked attention and concentration limitation (Tr. 648-50), were not consistent with Plaintiff's ability to independently complete his activities of daily living, including writing for enjoyment, coloring, and repairing engines. Tr. 15, 18, 19; *see* Tr. 191-98, 410-13, 426-30, 435, 438, 445, 473, 603-04, 608. Notably, in March 2015 and March 2016, Plaintiff indicated that he was looking for employment. Tr. 15; *see* Tr. 191, 533, 536.[1][9]. · · · Accordingly, **the ALJ provided ample good reasons for assigning no more than partial weight to Dr. Haney's opinions.**

**For the same reasons, the ALJ also properly assigned partial weight to Dr. Westerfield's statement**, where she reiterated Plaintiff's claim that anger and interpersonal conflicts with superiors and co-workers made it difficult for him to work. Tr. 19; *see* Tr. 644. In addition, the ALJ pointed out that Dr. Westerfield had treated Plaintiff for only a few months in 2015, which was well before the date of her March 2017 opinion. Tr. 19; *see* Tr. 644 (Dr. Westerfield treated Plaintiff for ten sessions between May 20, 2015 and November 11, 2015). The ALJ also acknowledged Dr. Westerfield's observation that malingering by Plaintiff could not be ruled out as he was a poor historian and was often inconsistent even within the same session with regard to his history, symptoms and current functioning. Tr. 19; *see* Tr. 644. The ALJ logically found that this significantly undermined Dr.

---

[9] Footnote 1 reads:

> As noted by the ALJ, although this evidence was submitted prior to the amended alleged onset date, the record does not reflect a significant decline or worsening of Plaintiff's functioning following his application. Tr. 18, Footnote 2.

ECF No. 21 at 6, note 1.

Westerfield's statement. Tr. 19. Nevertheless, the ALJ observed that Dr. Westerfield was a treating source and a mental health specialist and that her statement, therefore, merited some weight. Tr. 19. 20 C.F.R. §§ 404.1527(c)(2) & (5) (medical source's treatment relationship and specialization as factors considered when weighing opinions). . . . .

**The ALJ incorporated the opinions of Drs. Haney and Westerfield into the RFC finding to the extent they were supported by the record**. . . . Significantly, the ALJ was not required to incorporate the portion of Dr. Haney's check-box opinion that Plaintiff was markedly limited in his ability to maintain attention and concentration for extended periods because, as found earlier in the decision (Tr. 14-15), the record did "not support more than moderate limitations in any domain of functioning…" Tr. 19; *see* Tr. 648. In fact, immediately below Dr. Haney's check-box opinion of a marked limitation in attention and concentration, he wrote that Plaintiff's "]c]ompletion of a work-week wouldn't be impacted by psychological [symptoms]. Nor would 'pace' be an issue." Tr. 18; *see* Tr. 648-49. **Dr. Haney's narrative statement supports the ALJ's finding of no more than moderate mental limitations.**[2][10] **Tr. 18-19.** . . . . It was Plaintiff's burden to prove that Dr. Haney's April 2017 opinion of slight-to-moderate limitations precluded the performance of work-related activities, but he failed to do so.

ECF No. 21 at 5-7 of 12.

The court concludes that the ALJ's rationale for assigning partial weight to the opinions of Dr. Haney and Dr. Westerfield is articulated, reviewable, and supported by substantial evidence; that the plaintiff has demonstrated no legal error, and that the ALJ is entitled to substantial deference, despite

---

[10] Footnote 2 reads:

> The Commissioner further notes that in February and March 2015, Dr. Haney stated that Plaintiff had no limitation in concentration or persistence. Tr. 410, 427.

ECF No. 21 at 7, note 2.  .

the existence of evidence supporting the contrary position. Therefore, the ALJ's Decision should be affirmed.

## III. **Conclusion**

For the reasons set forth above, the plaintiff's Motion to Reverse or Remand an Administrative Agency Decision (ECF No. 19) is hereby DENIED, and the defendant's Motion for an Order Affirming the Commissioner's Decision (ECF No. 21) is hereby GRANTED.

The Clerk shall enter judgment accordingly and close this case.

It is so ordered.

Dated this 27th day of September 2019, at Hartford, Connecticut.

_____/s/AWT___ _____
Alvin W. Thompson
United States District Judge
